UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE WILLIE BUFORD,     :
                          :
     Plaintiff,     :
                          :
     v.     : CIVIL NO. 3:CV-14-1573
                          :
HARRELL WATTS, et al.,     : (Judge Kosik)
                          :
     Defendants.     :

## MEMORANDUM

Plaintiff, George Buford, an inmate confined at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), filed this mandamus action pursuant to 28 U.S.C. § 1361 with Bivens[1] allegations. (Doc. 1, Compl.)  Pending on the docket are numerous motions that will be addressed herein.

## I.   Background

The Court has construed the Complaint to consist of Document 1 (Id.) and a supporting declaration submitted by Plaintiff (Doc. 10).  The Complaint is entitled "Action to Compel an Officer of the United States to Perform his Duty - Title 28 U.S.C. § 1361."  In his submission, Plaintiff states that he is experiencing difficulty with accessing the grievance procedure at USP-Lewisburg.  Specifically, he references the problems he is having attempting to exhaust his administrative remedies with respect to the following issues: (1) obtaining special shoes for his diabetic foot neuropathy condition; (2) wild bird infestation in

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

B-Unit; (3) treatment for his high blood pressure; (4) the denial of access to the

Administrative Remedy Program; (5) the failure to treat respiratory irritant exposure; (6) the

denial of the First Amendment; and (7) forced double-celling. While the Complaint does not

contain a Statement of Claim section, wherein he provides the details of his claims, he does

attach letters sent to various Defendants discussing these issues, which he claims were

exhaustion attempts and which were ignored. (Doc. 1 at 16-37.) Plaintiff also filed a

declaration in support of his Complaint, which mainly describes the bird infestation problem.

(Doc. 10.)

Named Defendants include Bureau of Prisons employees, Harrell Watts, National

Inmate Appeals Coordinator, and Michael Tafelski, the Northeast Regional Counselor. Also

named are the Warden at USP-Lewisburg and the following USP-Lewisburg employees: Ron

Hicks, Safety Director; Kevin Pigos, Clinical Director; Steve Brown, Health Services

Administrator; John Adami, B-Unit Manager; Andrew Edinger, M.D.; Anna Zimmerman, B-

Unit Case Manager; Autumn Cotterall; and Brent Tharp, B-Unit Counselor.

Plaintiff requests injunctive relief in the form of receiving his medical shoes and

treatment for his hypertension. He also requests that Defendants eliminate the bird problem

in Unit-B and house him in accordance with OPI ADM 1060.11(7)(c)(1)(a).

Service of the Complaint and supporting statement have been directed. Pending on

the docket are numerous submissions by Plaintiff, including motions for injunctive relief

(Docs. 13, 20), a motion for the appointment of counsel (Doc. 29), a motion for the extension

of time to oppose summary judgment (Doc. 30), a motion seeking judicial review (Doc. 36),

a motion for directed verdict (Doc. 37), a motion to take judicial notice (Doc. 35) and two

documents labeled as "Affidavits." (Docs. 12, 21).  Also pending is Defendants' motion for

summary judgment (Doc. 28).

## II.   Discussion

### A.   Motion for counsel

Plaintiff seeks the appointment of counsel in this action.  In support thereof, he states

that he was attacked in November of 2014, and has noticed some complications as a result

thereof due to a hemorrhage he suffered, which affects his vision.  As such, he claims that

preparing his submissions is more difficult.  (Doc. 29.)

Although prisoners have no constitutional or statutory rights to appointment of

counsel in a civil case, Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), district

courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1).

Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002)(citing Tabron v. Grace, 6 F.3d

147, 153 (3d Cir. 1993)); Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981).  The United

States Court of Appeals for the Third Circuit has stated that the appointment of counsel for

an indigent litigant should be made when circumstances "indicate the likelihood of

substantial prejudice to him resulting, for example, from his probable inability without such

assistance to present the facts and legal issues to the court in a complex but arguably

meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the

"precious commodity" of volunteer counsel is whether the plaintiff's case "has some

arguable merit in fact and law." Montgomery, 294 F.3d at 499.  Without passing judgment as

to the ultimate merits of Plaintiff's claims, for the sole purpose of these motions, the Court

3

will assume that the case has arguable merit in law and the facts.

Upon successfully clearing the above hurdle, other factors to be examined are:

1. The plaintiff's ability to present his or her own case;

2. The difficulty of the particular legal issues;

3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. The plaintiff's capacity to retain counsel on his or her own behalf;

5. The extent to which a case is likely to turn on credibility determinations; and

6. Whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499 (citing Tabron, 6 F.3d at 155-57).

In his motion, Plaintiff fails to set forth any special circumstances or factors that would warrant the appointment of counsel at this time. Tabron, 6 F.3d at 155-56. The pleadings submitted by Plaintiff so far are clearly written and the legal issues presented are not complex. Plaintiff appears to have access to the law library and legal materials. It is also clear that he has no problems preparing and submitting documents with the court as demonstrated by the docket in this case. While Plaintiff may have experienced some difficulty with preparing documents immediately following his injury, that was over seven (7) months ago, and it is evident he has been, and is presently able to, litigate this action on his own. It cannot be said, at least at this point, that Plaintiff will suffer substantial prejudice if he is required to proceed with the prosecution of this case without the assistance of counsel. This court's liberal construction of *pro se* pleadings, Haines v, Kerner, 404 U.S. 519 (1972), coupled with Plaintiff's apparent ability to litigate this action, weigh against the

4

appointment of counsel. His pending motion for counsel will be denied. If future proceedings demonstrate the need for counsel, the matter may be reconsidered either *sua sponte* or pursuant to a properly filed motion.

### B.    Motions for injunctive relief

Plaintiff has filed two documents construed by the Court to be motions for injunctive relief. (Docs. 13, 20.) In the first motion, he claims that USP-Lewisburg staff have gone to great lengths to express their anger toward him by: (1) throwing his food on the floor, knowing he is an insulin-dependent diabetic; (2) refusing to provide him a Kosher diet for 18 days; and (3) denying him recreation for several days, as of the time he filed his motion on September 15, 2014. (Doc. 13.) On October 20, 2014, Plaintiff filed a second motion for injunctive relief. He claims that on October 15, 2014, he notified Block Officer Hawk that his blood sugar was low, and that he was having a hypoglycemic episode. Hawk thereafter notified Nurse Schoonover. Schoonover told Hawk to instruct Plaintiff to eat his snack and check his level again in an hour. (Doc. 20.) Although Schoonover did later come to Plaintiff's cell, he contends he did not receive proper treatment for his hypoglycemia and was irreparably harmed.

An injunction is an "extraordinary remedy" that is never awarded as of right. <u>Winter v. Natural Res. Def. Council</u>, ___ U.S. ___, 129 S.Ct. 365, 375, 172 L.Ed.2d 249 (2008). The Third Circuit has outlined four requirements that a court ruling on a motion for a preliminary injunction must consider: (1) whether there is a reasonable probability of success on the merits; (2) whether irreparable injury will result without injunctive relief; (3) whether granting the injunction will result in even greater harm to the nonmovant; and (4) whether

5

granting the injunction is in the public interest. Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006); Crissman v. Dover Downs Entm't Inc., 239 F.3d 357, 364 (3d Cir. 2001). The movant bears the burden of establishing these elements. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chamberlain, 145 F. Supp.2d 621, 625 (M.D. Pa. 2001). A failure to establish any element in his or her favor renders a preliminary injunction inappropriate. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). While each factor need not be established beyond a reasonable doubt, they must combine to show the immediate necessity of injunctive relief. See Stilp v. Contino, No. 1:09-cv-0524, 2009 WL 1842087 at *4 (M.D. Pa. June 29, 2009) (citing Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002)).

To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. See Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir. 1980); McCahon v. Pa. Tpk. Comm'n, 491 F.Supp.2d 522, 527 (M.D. Pa. 2007). Moreover, a preliminary injunction cannot be granted absent a showing of irreparable harm. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). The moving party must offer a "clear showing of immediate irreparable injury." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987); see also Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989). The Third Circuit has made clear that the risk of irreparable harm must not be speculative. See Adams v. Freedom Forge Corp., 204 F.3d 475, 487 (3d Cir. 2000).

In applying these principles, Plaintiff has failed to demonstrate that he is likely to succeed on the merits or that he will suffer irreparable harm with respect to any of the

6

allegations set forth in his motions.[2]  The Court will address each of his claims separately.[3]

### Denial of Kosher diet

Defendants have come forward with a declaration establishing that, on August 19, 2014, a block officer recovered a melted food tray during a search of Plaintiff's cell.  (Doc. 23-1, Ex. 1 ¶ 3, D. Waughen Decl.; Attach. A, Incident Report.)  Pending an investigation into the matter, Plaintiff was placed on a sack-lunch.  (Id. ¶ 5.)  At a subsequent Unit Disciplinary Hearing, Plaintiff admitted that the lunch tray was his.  (Id. ¶ 6.)  He was found to have committed the prohibited acts of "Possession of Anything Unauthorized" and "Destroying Government Property under $100.00," in violation of Codes 305 and 329.  (Id.)  Plaintiff was sanctioned to the loss of phone and commissary privileges for 90 days.  After the incident report was resolved, he was placed on commonfare meals, which are classified as Kosher.  (Id. ¶ 7.)

The record establishes that the decision to temporarily place Plaintiff on a sack-lunch was directly related to his own actions, which created a security concern, and that he suffered no irreparable harm in that he continues to receive his Kosher diet.

---

[2]  In replying to the opposition filed by Defendants, Plaintiff does not address any of the arguments made in response to the merits of his motions for injunctive relief.  Rather, he argues that Defendants' opposition brief should be disregarded by the Court on the basis that it is untimely.  (Doc. 26.)  Plaintiff's argument is without merit.  The Court issued an order on October 22, 2014, directing Defendants to respond to the motions for injunctive relief within ten (10) days.  Defendants' brief was filed on November 3, 2014.  Because the tenth day fell on November 1, 2014, a Saturday, the filing of the brief on Monday, November 3, 2014 was timely.  See Fed. R. Civ. P. 6(a)(1)(C).

[3]  The Court agrees with Defendants that because Plaintiff never identifies which staff member allegedly threw his food on the floor, that it is impossible to address such allegations, and the motion will be denied with respect to this claim without prejudice.

*Recreation time*

In opposing Plaintiff's motion for injunctive relief, Defendants submit the declaration of Lieutenant B. White. (Doc. 23-1, Ex. B, White Decl.) White describes the situations where an inmate may be denied recreation including severe weather, lack of readiness, poor cell sanitation, and for violating BOP rules and regulations. (Id. ¶ 3.) Special Management Unit ("SMU") inmates are required to be prepared for recreation at the time the officers arrive at their cell door for escort. (Id. ¶ 4.) They are provided with ample notice of recreation time and must be properly dressed. It is not possible to wait for inmates who are not ready due to the volume of inmates who need to be moved. Recreation is usually offered five times per week, but inmates may also decline participation. (Id. ¶¶ 5, 6.) Logs of an SMU inmate's daily activities are maintained, including exercise. (Id. ¶ 7.)

According to the log submitted, Plaintiff was regularly offered recreation periods from the date this action was commenced, through the filing of Defendants' opposition to the motions for injunctive relief. (Id. ¶ 8.) The log reveals that on some occasions, Plaintiff participated, on others he refused, and on other dates, recreation periods were cancelled due to weather, or other institutional conditions such lockdowns. (Id., Attach. A, Housing Unit Daily Activity.) Because the records reveal that Plaintiff was and is regularly offered recreation periods, his motion for injunctive relief will be denied.

*Medical care for hypoglycemia*

Defendants have produced medical records, establishing that on October 15, 2014, a block officer contacted the prison's medical department at 10:30 p.m,. to report that Plaintiff's blood glucose level was 23. (Doc. 23-1, Ex. 2, Edinger Decl. ¶ 4.) Plaintiff's

condition at the time was reported as awake, alert, oriented and standing at his cell door. (<u>Id.</u>

¶ 5.)  As per on-duty Nurse Schoonover's instruction, the officer gave Plaintiff something to

eat.  Shortly thereafter, Schoonover went to Plaintiff's cell to evaluate him.  He was awake,

alert, oriented, and not diaphoretic or in any distress.  In fact, he was standing at the sink

washing his feet.  Plaintiff informed Schoonover that after eating the snack, his glucose level

rose to 47. (<u>Id.</u> ¶ 8.)  The officer was instructed by Schoonover to give Plaintiff another

snack for the evening and contact health services if there were any further issues with

Plaintiff's glucose. (<u>Id.</u> ¶ 9.)

      In his declaration, Dr. Edinger states that since Plaintiff's arrival at USP-Lewisburg,

he has been regularly monitored for Type II diabetes, diabetic neuropathy, hypertension,

hypercholesterolemia and chronic venous stasis. (<u>Id.</u> ¶ 3.)  As a result of his diabetes,

Plaintiff may experience low glucose readings depending on his daily routine, including the

amount of medication he takes, the amount of food he eats, and if he exercises more than

usual. (<u>Id.</u> ¶ 10.)  Mildly low blood sugars are common in individuals with diabetes and can

be monitored and controlled by the individual.  If symptoms of low blood sugar are

experienced, eating something with carbohydrates will raise the glucose level. (<u>Id.</u> ¶¶ 11-15.)

As a diabetic, Plaintiff has also been advised on many occasions to be cognizant of his blood

sugar levels. (<u>Id.</u> ¶ 20.)

      Plaintiff's medical records do not reveal that he has reported any further issues with

his glucose levels following the October 15, 2014 incident.  Moreover, Plaintiff has been

seen by health services for unrelated events, since that time.

      Based on the foregoing, it cannot be found that it is likely Plaintiff would be

successful on the merits of an inadequate medical care claim. First, the individuals involved

with respect to his claim are not named as defendants in this action. More importantly, the

facts do not suggest deliberate indifference on the part of the prison officer and/or nurse, and

Plaintiff cannot demonstrate irreparable harm, in that he was provided, and continues to

receive, proper medical care for his condition. For all of these reasons, Plaintiff's motions

for injunctive relief will be denied.

### C. Motion for Extension of Time

On November 26, 2014, Defendants filed a motion for summary judgment,

exclusively addressing the mandamus issues raised by Plaintiff. (Doc. 28.) Defendants

reserved the right to address Plaintiff's Bivens claims, should the court decide that the Bivens

claims should proceed. (Doc. 32, n. 2.) In support of their motion, Defendants have

submitted a brief, a statement of material facts and evidentiary materials. (Docs. 28, 32 and

33.)

Plaintiff filed a motion seeking an enlargement of time within which to oppose

Defendants' motion for summary judgment. This motion was filed prior to the time

Defendants submitted their supporting brief, statement of facts and evidentiary materials.

However, following the submission of Defendants' documents, Plaintiff submitted a "Sworn

Affidavit of Notice of Spoliation Evidence," in support of his motion for extension of time to

oppose summary judgment.[4] (Doc. 34.)

---

[4] In his motion for extension of time, Plaintiff states that he contemporaneously
submits a sworn statement under 28 U.S.C. § 1746 in support of his motion. However, no
such statement was attached thereto. However, a sworn statement was later filed on January
9, 2015 (Doc. 34), and the Court will assume this was the statement Plaintiff intended to

In reviewing Plaintiff's filings, he seeks an enlargement of time within which to respond to Defendants' motion. While his submissions are somewhat confusing to follow, it is clear that he challenges the evidentiary materials submitted by Defendants in support of their motion, and argues vehemently that they are false. There also is little doubt that he believes he has been placed at an unfair advantage by being required to oppose Defendants' filings at this stage of the proceedings. He maintains that Defendants responded to his lawsuit with a motion for summary judgment supported by over 100 pages of documents, and that he has had no "fair opportunity" to challenge these submissions. (Doc. 34 at 6-7.) He argues that only a portion of the medical record is provided, and that documents that would support his claim that administrative requests were submitted, are absent. He specifically points to the lack of a log book from the evidentiary materials, that he claims is being concealed by Defendants.

In light of the foregoing, the Court finds that Plaintiff should at least be afforded the opportunity to conduct discovery in this matter in an attempt to oppose the evidentiary materials submitted by Defendants. As such, Plaintiff's motion for extension of time will be granted to the extent that a discovery period will be imposed in this case of ninety (90) days. Defendants' pending motion for summary judgment will be denied without prejudice to refile following the expiration of the discovery period.

**D.   Motions for review/directed verdict**

Plaintiff has filed motions seeking review and for directed verdict. (Docs. 36, 37.)

---

attach to his motion for extension.

11

The gist of these motions is Plaintiff's belief that he has not been provided the opportunity to challenge Defendants' submissions. He also complains about the Court's delay in resolving his motions. In light of the fact that the motions pending on the docket have now been addressed and Plaintiff will be afforded the opportunity to conduct discovery in an effort to support his claims, the motions for review and directed verdict will be denied as moot.

### E.   Miscellaneous submissions

Also pending on the docket are two "Affidavits" (Docs. 12, 21) and a motion to take judicial notice (Doc. 35), filed by Plaintiff. In reviewing these documents, they do not appear to be associated with the named Defendants or claims asserted in the instant action. Rather, they set forth allegations with respect to unrelated incidents against non-Defendants and are not properly raised in this action. As such, the Clerk of Court will be directed to strike these documents from the record and return them to Plaintiff.

An appropriate order follows.

12